UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES MADISON KELLEY,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. 16-CV-01141-LHK<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.** |

Appellant James Madison Kelley ("Kelley"), proceeding *pro se*, appeals the Bankruptcy Court's entry of judgment in favor of Appellee JPMorgan Chase Bank, N.A. ("Chase"). The Bankruptcy Court held that it lacked subject matter jurisdiction over Kelley's claims because Kelley's claims against Chase were barred by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Alternatively, the Bankruptcy Court held that, even assuming that FIRREA did not bar Kelley's claims, Chase was entitled to summary judgment because Kelley's claims were non-meritorious. For the reasons stated below, the Court AFFIRMS the Bankruptcy Court's entry of judgment in favor of Chase.

1

Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

# I. BACKGROUND

The background of this litigation involves overlapping events over multiple years. In addressing the relevant background, the Court first discusses the factual background of Kelley's loans with Washington Mutual Bank, F.A. ("WaMu"), Kelley's state court lawsuit against WaMu, and the closing of WaMu in 2008. Then, the Court discusses the procedural history of the instant appeal, which includes Kelley's Chapter 11 bankruptcy, Kelley's adversary proceeding against Chase in the Bankruptcy Court, and the Bankruptcy Court's entry of judgment in favor of Chase.

## A.  Factual Background

In 2005, Kelley took out two loans encumbering property at 14390 Douglass Lane in Saratoga, California ("the Property"). *See* Appellee Appendix ("Appellee App.") at 1393–1414. In 2007, Kelley obtained two refinance loans from WaMu, and these two refinance loans are the subject of the instant appeal.

### 1. Kelley's 2007 Loans and Kelley's Default on the Loans

On July 26, 2007, Kelley executed an adjustable rate note in favor of WaMu in the principal amount of $2,992,265.00 ("First Loan"). *See* Appellee App. at 1192, 1196–1201. On that same day, Kelley executed a "Truth in Lending Disclosure Statement" and a "Notice of Right to Cancel" with respect to the First Loan. *See id.* at 1192, 1229–31. The First Loan is secured by a deed of trust that was recorded against the Property on July 31, 2007. *Id.* at 1205–20.

On or about September 17, 2007, Kelley obtained a home equity line of credit from WaMu in the maximum amount of $250,000.00 ("Second Loan" and, collectively with the First Loan, the "Loans"). *Id.* at 1192. The Second Loan is secured by a deed of trust that was recorded against the Property on October 3, 2007. *Id.* at 1192, 1243–46. Kelley executed an "Important Terms of Our WaMu Equity Plus" with respect to the Second Loan, as well as a "Notice of Right to Cancel Secured Line of Credit." *Id.* at 1252–55, 1257–58.

On June 30, 2007, after Kelley defaulted on the Loans, WaMu recorded a notice of default and election to sell with respect to the First Loan. *See id.* at 1356; 1433–34.

2
Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

**2. Kelley's Lawsuit against WaMu in California State Court and WaMu's Closing**

On July 28, 2008, Kelley brought suit against WaMu and Louis Helmonds ("Helmonds"), an alleged employee and agent of WaMu, in California state court. *See id.* at 1522. Kelley alleged that WaMu and Helmonds failed to make full disclosures to Kelley at the time that Kelley took out the Loans with WaMu, and that WaMu made deliberate misrepresentations to Kelley to induce Kelley to enter into the Loans. *Id.* at 1522–32. Kelley sued WaMu and Helmonds for fraud; negligent misrepresentation; and violation of California Business and Professional Code § 17200. *Id.*

On September 19, 2008, Kelley filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of California. *See id.* at 1–13. Kelley's bankruptcy proceedings are discussed more fully, *infra*, in the procedural history of this case.

On September 25, 2008, the Office of Thrift Supervision closed WaMu and appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver. *Id.* at 1193. On that same date, Chase entered into a Purchase and Assumption Agreement ("P&A Agreement") with the FDIC. *Id.* Pursuant to Chase's P&A Agreement with the FDIC, Chase acquired WaMu's assets. *Id.*

On October 1, 2008, the FDIC published in the Wall Street Journal a notice to creditors and depositors of WaMu. *Id.* at 1558. The notice explained the FDIC's receivership and the mandatory procedure for submitting to the FDIC a claim against WaMu. *Id.* at 1558.

On February 19, 2009, the FDIC mailed a written notice to Kelley and explained to Kelley the closing of WaMu and the mandatory procedure for submitting to the FDIC a claim against WaMu. *Id.* at 1560. This written notice advised Kelley that "[a]lthough the Claims Bar Date has passed, under federal law the Receiver may consider claims filed after the Claims Bar Date" under certain circumstances. *Id.* The FDIC explained that, in order for the Receiver to consider Kelley's claims against WaMu, Kelley must complete and sign a "Proof of Claim Form" and submit supporting documentation to the FDIC on or before May 20, 2009. *Id.* According to the FDIC, "Kelley did not file an administrative claim with the FDIC as Receiver by the Late Claim Bar Date

3

or any other date." *Id.* at 1547.

On March 22, 2010, the FDIC as Receiver for WaMu moved in Kelley's state court proceeding for summary judgment against Kelley. *Id.* at 1541. The FDIC argued that, because Kelley had failed to exhaust his administrative remedies with the FDIC as required by FIRREA, FIRREA's jurisdictional bar for unexhausted claims deprived the state court of jurisdiction over Kelley's claims. *Id.* at 1542.

On July 19, 2010, the Superior Court for the County of Santa Clara dismissed Kelley's claims with prejudice. The state court agreed with the FDIC that the state court lacked subject matter jurisdiction over Kelley's claims because Kelley did not exhaust his administrative remedies with the FDIC. *Id.* at 1565–66.

### B. Procedural Background

#### 1. Kelley's Chapter 11 Bankruptcy Proceedings

As stated above, Kelley filed for Chapter 11 bankruptcy on September 19, 2008. On September 25, 2008, WaMu was closed, and Chase acquired WaMu's assets pursuant to the P&A Agreement, including the Loans at issue. On October 17, 2008, Chase filed in Kelley's Chapter 11 proceedings a proof of claim for the First Loan. *Id.* at 37. Chase filed a proof of claim for the Second Loan on December 2, 2008. *Id.* at 107.

On January 5, 2009, Kelley filed a Chapter 11 plan of reorganization, which proposed selling the Property. *See id.* at 118. The Bankruptcy Court never confirmed Kelley's Chapter 11 plan of reorganization.

On July 15, 2010, Kelley initiated an adversary proceeding against Chase in the Bankruptcy Court. *See id.* at 125. As relevant here, the operative complaint is Kelley's Third Amended Complaint ("TAC"), which was filed on May 30, 2014. *Id.* at 208.

Kelley alleged in his TAC that Helmonds met with Kelley on July 6, 2007 and prepared an application for the First Loan. *Id.* at 212. According to Kelley, WaMu "formally changed the First Loan from a 40-year loan to a 30-year loan" on July 10, 2007, and Kelley "was not informed of the changes." *Id.* at 213. Kelley further alleged that, with regards to both Loans, "Helmonds

4

Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

made affirmative misrepresentations, inaccurate disclosures, did not disclose at the proper time, and concealed critical information that would have alerted [Kelley] to the enormously increased risk of the default in the refinance." *Id.* at 231. Kelley also asserted that "Washington Mutual Bank, F.A." was a "'straw man' lender name" and that "Washington Mutual Bank, F.A." did not exist. *Id.* at 215.

Kelley's TAC requested that the Bankruptcy Court (1) declare the Loans contractually invalid, (2) declare the Loans rescinded under the Truth in Lending Act ("TILA"), and (3) declare that Chase did not validly hold claim to the Loans because Chase did not receive the Loans after WaMu's receivership. *Id.* at 230–34.

### 2. The Parties' Summary Judgment Motions and the Bankruptcy Court's Grant of Summary Judgment in Favor of Chase

On June 19, 2016, Kelley moved in the Bankruptcy Court for summary judgment against Chase. *Id.* at 435.[1] Kelley argued that the Loans were invalid because "Washington Mutual Bank, F.A." merged with "Washington Mutual Bank" in April 2005, and therefore "Washington Mutual Bank, FA" became "no longer a separate operating entity." *Id.* at 443. According to Kelley, "the Note and Deed of Trust reflect the name Washington Mutual Bank, F.A. who was not capable of contracting." *Id.* Moreover, Kelley asserted that WaMu made misrepresentations to Kelley at the time that Kelley entered the Loans, including that Kelley "was required to agree to a prepayment penalty," that Kelley "was not notified of [an] interest rate change," and that "[t]he Notices of Right to Cancel were withheld" from Kelley. *Id.* at 444. According to Kelley, these deficiencies

---

[1] Kelley moved in the Bankruptcy Court for partial summary judgment against Chase. Kelley did not move for summary judgment on Kelley's sixth claim, which was entitled "First Loan Payment and Discharge of Debt." *See* Appellant App. at 241–42. Chase moved for full summary judgment against Kelley. However, the parties' summary judgment motions before the Bankruptcy Court do not appear to address Kelley's claim for "First Loan Payment and Discharge of Debt," and this claim also was not addressed by the Bankruptcy Court in its order granting summary judgment. Further, the parties do not address this claim on appeal to this Court. Accordingly, the Court will not address this claim, and will consider the issue waived. *See in re Wade*, 2014 WL 5088258, at *3 (N.D. Cal. Oct. 9, 2014) (noting that issues not raised before the Bankruptcy Court, or not raised before the district court on appeal from the Bankruptcy Court, are waived).

5
Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

made the Loan contracts void as a matter of law. *See id.* at 445–46. Further, Kelley asserted that, pursuant to Kelley's right to rescind under TILA, Kelley rescinded the First Loan on August 24, 2009, and Kelley rescinded the Second Loan on June 24, 2010. *Id.* at 446–49. Finally, Kelley argued that Chase did not have ownership of the Loans because it was not possible for the Loans to be owned by "Washington Mutual Bank, F.A. at the time of its failure" and "the FDIC/Chase transaction did not transfer ownership to Chase." *Id.* at 451. Kelley also argued that the note respecting the First Loan was falsely endorsed "in blank by Cynthia Riley, Vice President of Washington Mutual Bank, F.A." *See id.* at 450–53.

On July 22, 2015, Chase filed an opposition to Kelley's motion for summary judgment. *See id.* at 1133. Kelley filed a reply in support of his motion for summary judgment on July 29, 2015. *Id.* at 1707.

On September 23, 2015, Chase filed in the Bankruptcy Court a motion for summary judgment against Kelley. *Id.* at 1815. Chase's motion asserted that FIRREA divested the Bankruptcy Court of jurisdiction over Kelley's claims and, in any event, that Kelley's Loans were valid and that Chase owned Kelley's Loans. *See id.* at 1821. On October 27, 2015, Kelley opposed Chase's motion for summary judgment. *Id.* at 2350. On November 3, 2015, Chase filed a reply in support of its motion for summary judgment. *Id.* at 2411.

On January 21, 2016, the Bankruptcy Court issued a decision denying Kelley's motion for summary judgment and granting Chase's motion. *In re Kelley*, 545 B.R. 1 (Bankr. N.D. Cal. 2016). The Bankruptcy Court found that FIRREA's jurisdictional bar applied to each of Kelley's claims. *Id.* at 7–8. Because Kelley did not exhaust his claims with the FDIC within the deadline for filing a claim, the Bankruptcy Court held that FIRREA deprived the Bankruptcy Court of subject matter jurisdiction. *Id.* at 7–8. In the alternative, the Bankruptcy Court held that Kelley's claims were without merit, even assuming Kelley's claims were not barred by FIRREA. *Id.* at 10–13. Specifically, the Bankruptcy Court held that Kelley's claims for TILA rescission were untimely, that Kelley "ha[d] not demonstrated that he c[ould] tender an amount necessary to

6

Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

rescind the loans," that "[n]othing support[ed] [Kelley's] implication that [WaMu's] change of name meant that Washington Mutual Bank, F.A. itself ceased to exist," and that Chase was the holder of the notes underlying the First and Second Loans. *Id.*

On February 20, 2016, the Bankruptcy Court issued a judgment dismissing Kelley's claims against Chase with prejudice. *Id.* at 2590.

On March 10, 2016, the Bankruptcy Court converted Kelley's bankruptcy case from Chapter 11 to Chapter 7. *Id*. at 2688–89.

**4. Kelley's Appeal of the Bankruptcy Court's Order to this Court**

On March 8, 2016, Kelley filed in this Court a notice of appeal from the Bankruptcy Court's January 21, 2016 order denying Kelley's motion for summary judgment and entering judgment in favor of Chase. *See* ECF No. 1.

This Court's initial scheduling order stated that Kelley was to serve a brief within 28 days after entry of the appeal. ECF No. 2. This Court issued an order to show cause on August 11, 2016, because Kelley did not file a brief within 28 days of entering his appeal. ECF No. 13. On August 22, 2016, Kelley responded to the order to show cause, and this Court vacated the order to show cause on August 29, 2016. ECF No. 19.

On September 12, 2016, Kelley filed an opening brief. ECF No. 22 ("Appellant Br."). On October 20, 2016, Chase filed its response brief. ECF No. 25 ("Appellee Br."). On November 2, 2016, Kelley filed a reply. ECF No. 39 ("Reply Br.").

**II.   STANDARD OF REVIEW**

On appeal, a district court reviews a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *See In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990). Thus, the Court reviews the Bankruptcy Court's legal decisions regarding the summary judgment motions *de novo*. *See In re Focus Media, Inc.*, 378 F.3d 916, 922 (9th Cir. 2004). "Summary judgment is appropriate 'if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *In re Kaypro*,

7

Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

218 F.3d 1070, 1073 (9th Cir. 2000)).  Further, the Court reviews the Bankruptcy Court's legal decisions regarding subject matter jurisdiction *de novo*.  *In re Marshall*, 264 B.R. 609, 618 (C.D. Cal. 2001).

## III.  DISCUSSION

The Bankruptcy Court held that FIRREA applied to Kelley's claims and that it lacked jurisdiction over Kelley's claims because Kelley had failed to exhaust his administrative remedies with the FDIC.  For the reasons discussed below, the Court agrees with the Bankruptcy Court that Kelley's claims are barred by FIRREA.  Moreover, the Court agrees with the Bankruptcy Court that, even assuming that FIRREA does not bar Kelley's claims, Kelley's claims are non-meritorious.  The Court first reviews FIRREA's jurisdictional bar, and then the Court examines each of Kelley's claims.

### A.  Overview of FIRREA's Jurisdictional Bar

FIRREA "grants the FDIC authority to 'act as receiver or conservator of a failed institution for the protection of depositors and creditors.'"  *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir. 2012) (quoting *Sharpe v. FDIC*, 126 F.3d 1147, 1154 (9th Cir. 1997)).  The statute "provides detailed procedures to allow the FDIC to consider certain claims against the receivership estate."  *Id.*

Specifically, "[a]s set forth in FIRREA, once the FDIC is appointed receiver for a failed depository institution, it must publish a notice to all of 'the depository institution's creditors' with instructions 'to present their claims, together with proof, to the receiver' by a specific date."  *Rundgren v. Wash. Mut. Bank*, 760 F.3d 1056, 1060 (9th Cir. 2014) (quoting 12 U.S.C. § 1821(d)(3)(B)(i)).  "The FDIC must also mail the notice 'to any creditor shown on the institution's books,' and 'upon discovery of the name and address of a claimant not appearing on the institution's books,' the FDIC must mail the notice to the claimant 'within 30 days after the discovery of such name and address.'"  *Id.* (quoting § 1821(d)(3)) (internal citations omitted). "Late claims 'shall be disallowed and such disallowance shall be final, unless the claimant did not

8

Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

receive notice of the appointment of the receiver in time to file such claim before [the designated] date,' and 'such claim is filed in time to permit payment of such claim.'" *Id.* (quoting § 1821(d)(5)(C)) (internal citations omitted).  If the FDIC receives a claim, the FDIC "'shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.'" *Id.* (quoting § 1821(d)(5)(A)).  If the FDIC disallows a timely submitted claim, "'the claimant may request administrative review'" or the claimant may "'file suit on such claim'" in the district court." *Id.* (quoting § 1821(d)(6)(A)).

Importantly, "FIRREA strips courts of jurisdiction over claims that have not been exhausted through th[e] process" described above. *Id.* at 1060–1061.  FIRREA provides:

> Limitation on judicial review.  Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

§ 1821(d)(13)(D).  The Ninth Circuit has explained that "[s]ection 1821(d)(13)(D) is drafted broadly to preclude courts from exercising jurisdiction over . . . 'any claim relating to any act or omission' of a failed bank, without respect to the identity of the claimant.'" *Rundgren*, 760 F.3d at 1061.

Moreover, the Ninth Circuit has held that when a plaintiff's claim "is based on the conduct of [a] failed institution," FIRREA's jurisdictional bar applies even if the plaintiff is asserting the claim "against a purchasing bank" of the failed institution, rather than the failed institution itself.  *See Benson*, 673 F.3d at 1214.  "Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process." *Id.* at 1214 (internal quotation marks omitted); *see also In re Prior*, 521 B.R. 353, 364–65 (Bankr. E.D.

9

Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

Cal. 2014) (applying *Rundgren* and *Benson* in the bankruptcy court and holding that FIRREA barred a debtor's claims against a lender that were functionally against a failed bank for which the FDIC was receiver).

### B.     FIRREA Applies to Kelley's Claims against Chase

The Court next turns to whether FIRREA applies to Kelley's claims against Chase. As set forth in the factual background section above, after the FDIC was appointed Receiver for WaMu, the FDIC followed the notice procedures required by FIRREA and published notice to WaMu's creditors in the Wall Street Journal. *See* Appellee App. at 1558. Moreover, on February 19, 2009, the FDIC mailed a written notice to Kelley and explained to Kelley that, in order for the Receiver to consider Kelley's claims against WaMu, Kelley must complete and sign a "Proof of Claim Form" and submit supporting documentation to the FDIC on or before May 20, 2009. *Id.* at 1560. In Kelley's state court case against WaMu, the FDIC informed the state court that "Kelley did not file an administrative claim with the FDIC as Receiver by the Late Claim Bar Date or any other date." *Id.* at 1547. The state court accordingly held that Kelley's claims against WaMu and Helmonds were barred by FIRREA.

The question here is whether Kelley's claims in the Bankruptcy Court against Chase are "claim[s]" that "relat[e] to 'any act or omission' of an 'institution for which the [FDIC] has been appointed receiver,'" such that FIRREA's administrative claims process applies. *Rundgren*, 760 F.3d at 1061. If so, then Kelley's claims against Chase in the Bankruptcy Court are, like Kelley's claims against WaMu in state court, barred by FIRREA. As stated above, Kelley's TAC against Chase in the Bankruptcy Court asserted claims for declaratory judgment of (1) "Statutory Contract Invalidity," (2) TILA Rescission of the Loans; and (3) that Chase was not the owner of the Loans. *See Id.* at 230–34. The Court considers each of Kelley's claims in turn to determine whether FIRREA applies.

**1. Kelley's Claim for Declaratory Judgment of "Statutory Contract Invalidity"**

Kelley's brief on appeal to this Court focuses primarily on Kelley's claim for declaratory

10

Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

judgment of "Statutory Contract Invalidity." *See* Appellant Br. at 13.  In the Bankruptcy Court, Kelley's TAC and summary judgment motion asserted that the Loans were contractually invalid because WaMu and its agents made numerous misrepresentations to Kelley at the time that Kelley took out the Loans.  *See, e.g.*, Appellee App. at 231 (alleging, in Kelley's TAC, that there was no "meeting of the minds" because "Helmonds made affirmative misrepresentations" to Kelley).  In Kelley's brief on appeal to this Court, Kelley relies on the argument that his Loans are contractually invalid because Kelley's Loans bear the name "Washington Mutual Bank, FA."  Appellant Br. at 13.  According to Kelley, "Washington Mutual Bank, FA" changed its name to "Washington Mutual Bank" on April 4, 2005.  *Id.*  Kelley thus contends that "Washington Mutual Bank, FA" is a "fictitious entity" that is not capable of contracting because "Washington Mutual Bank, FA" "ceased to exist as a bank by that name on April 4, 2005."  *Id.*  For the reasons discussed below, the Court agrees with the Bankruptcy Court that FIRREA bars Kelley's claim for declaratory judgment of "Statutory Contract Invalidity."

The Ninth Circuit has held that claims for declaratory relief are "claims" capable of resolution through FIRREA's administrative claims procedure.  *See Rundgren*, 760 F.3d at 1056 (holding that FIRREA "bars judicial review of any non-exhausted claim, monetary or nonmonetary, which is susceptible of resolution through the claims procedure,'" including claims for declaratory relief); *see also Willner v. Dimon*, --- F.3d ----, 2017 WL 634704, (4th Cir. Feb. 16, 2017) (relying on *Rundgren* and holding that "a request for a declaratory judgment is a 'claim' within the meaning of FIRREA because the FDIC can provide declaratory relief"); *Westberg v. F.D.I.C.*, 741 F.3d 1301, 1305 (D.C. Cir. 2014) ("[§ 1821(d)(3)(D)] subsection (ii)'s reference to 'any claim' includes a request for declaratory relief.").

Kelley's claim for "Statutory Contract Invalidity" against Chase also "relates to 'any act or omission'" of an 'institution for which the [FDIC] has been appointed receiver.'"  *Rundgren*, 760 F.3d at 1060 (quoting § 1821(d)(13)(D)) (internal citations omitted).  Specifically, Kelley asserts that his Loans are "void" because the Loan contracts that Kelley took out with WaMu bear the

11
Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

name "Washington Mutual Bank, FA," which Kelley asserts is a "fictitious bank." *See* Appellant Br. at 12–13. Kelley also alleges that the Loans are invalid because WaMu and its agent made numerous misrepresentations to Kelley at the time that Kelley took out the Loans with WaMu. *See, e.g.*, Appellee App. at 232–34. Kelley's factual allegations rest solely on the alleged misconduct of WaMu, a depository institution for which the FDIC is Receiver. Kelley alleges no independent misconduct of Chase, which did not issue the Loans to Kelley. *See id.* The Ninth Circuit has repeatedly recognized that "[a] claimant cannot circumvent the exhaustion requirement by suing the purchasing bank based on the conduct of the failed institution." *Rundgren*, 760 F.3d at 1064. Rather, "[w]here a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver," the claim fails within FIRREA's jurisdictional bar. *Id.* (quoting *Benson*, 673 F.3d at 1214). Thus, because Kelley's claim for declaratory judgment of "Statutory Contract Invalidity" is "functionally" against WaMu, it is barred by FIRREA.

Indeed, in *Rundgren*, the Ninth Circuit held that FIRREA applied to bar claims that relied on nearly identical factual allegations to those asserted by Kelley. In *Rundgren*, the plaintiffs alleged that "WaMu falsified the[ir] loan application, highly exaggerated [their] income and assets without their knowledge, misled the Rundgrens as to the terms of the note, secured a false appraisal, and rushed [the Rundgrens] through the signing process, among other things." *Id.* at 1059. The Rundgrens filed suit against Chase and sought "a declaratory judgment that the loan transaction was void and unenforceable and that Chase could not proceed" with a nonjudicial foreclosure sale. *Id.* The Ninth Circuit held that the Rundgrens' request for declaratory judgment against Chase was a "claim" that "relate[d] to any act or omission of WaMu," and was thus barred by FIRREA. *See id.* at 1059–60. Specifically, the Ninth Circuit held that "all claims in the complaint rest[ed] on the theory that WaMu took deceptive and fraudulent actions to induce [the Rundgrens] to enter into a loan agreement, and their mortgage and note are therefore unenforceable." *Id.* at 1064. The Rundgrens' claims thus "relate[d] to WaMu's acts or omissions for purposes of § 1821(d)(13)(D)" and FIRREA "stripped the district court of jurisdiction to

consider the Rundgrens' complaint." *Id.* at 1065; *see also Willner*, --- F.3d ----, 2017 WL 634704, at \*6 (holding that FIRREA barred a plaintiff's declaratory judgment action against Chase where the plaintiff argued that WaMu "made misrepresentations" to the plaintiff and where the plaintiff argued that "Washington Mutual Bank, F.A." "did not exist when the [plaintiffs] closed on the Loan").

Like the plaintiffs in *Rundgren*, Kelley asserts that his Loans are "void" because of actions taken by WaMu at the time that Kelley took out his Loans with WaMu. Thus, as the Ninth Circuit held in *Rundgren*, Kelley's claim for "Statutory Contract Invalidity" is functionally pleaded against the "acts and omissions" of WaMu, and FIRREA applies to Kelley's claim. As set forth above, the parties do not dispute that the FDIC sent notice to Kelley of the FIRREA administrative claims process, and that Kelley did not submit a claim to the FDIC within the time provided. *See* Appellee App. at 1547. Accordingly, the Bankruptcy Court did not err in holding that FIRREA deprived the Bankruptcy Court of subject matter jurisdiction over Kelley's declaratory judgment claim for "Statutory Contract Invalidity."

Finally, even assuming that FIRREA does not apply, the Bankruptcy Court's grant of summary judgment was nonetheless appropriate because Kelley's argument for "Statutory Contract Invalidity" is not meritorious. As stated above, Kelley argues on appeal that the Loans are contractually invalid because "Washington Mutual Bank, FA" is a "fictitious bank" that ceased to exist at the time of WaMu's name change in 2005.[2] *See* Appellant Br. at 13. However, "courts

---

[2] Kelley also asserts that the Loan was illegally "table funded" because "the actual Lender" was an investor, not WaMu. "Table funding" refers to a transaction in which "a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." *Easter v. Am. W. Fin.*, 381 F.3d 948, 955 (9th Cir. 2004) (quoting 24 C.F.R. § 3500.2). "'Table funding,' when it includes a kickback from the 'true lender' to the ostensible lender," is prohibited by the Real Estate Settlement Procedures Act ("RESPA"). *Warwick v. Bank of N.Y Mellon*, 2016 WL 2997166, at \*18 (C.D. Cal. May 23, 2016). However, as with Kelley's other contractual invalidity arguments, Kelley's "table funding" argument relies solely on the conduct of WaMu, and is thus barred by FIRREA. Regardless, even assuming that the claim is not barred by FIRREA, Kelley has not presented evidence showing that his Loans were table funded and, in any event, "to the extent that RESPA provides for a private cause of action, which Plaintiffs ha[ve] not directly pled, the damages are for treble damages and attorneys' fees, not the nullification of the loan," which is the remedy that Kelley seeks. *Id.* at \*19.

13
Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

have repeatedly rejected" the theory that "WaMu's name change in 2005" meant that "WaMu therefore ceased to exist as a legal entity." *See Burke v. JPMorgan Chase Bank, N.A.*, 2015 WL 2198319, at *4 n.1 (N.D. Cal. May 11, 2015); *Lanini v. JPMorgan Chase Bank*, 2014 WL 1347365, at *3 (E.D. Cal. Apr. 4, 2014) ("In plaintiffs' view, Chase cannot foreclose because it claims the beneficiary of the loan is Washington Mutual Bank, F.A., a nonexistent entity. . . . The court rejects any claim that the name change somehow precludes Chase's authority to foreclose."). The Bankruptcy Court did not err in granting summary judgment in favor of Chase on Kelley's claim for declaratory judgment of "Statutory Contract Invalidity."

### C.  Kelley's Claims for TILA Rescission of the Loans

Kelley also asserts claims against Chase seeking declaratory judgment that Kelley rescinded the Loans pursuant to TILA (hereinafter, Kelley's "TILA Rescission claims"). "TILA's 'buyer's remorse' provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security." *Garza v. Am. Home Mortg.*, 2009 WL 188604, at *3 (E.D. Cal. Jan. 27, 2009) (citing 15 U.S.C. § 1635(a)). TILA, and its accompanying regulations, "require the lender to provide a form stating the specific date on which the three-day rescission period expires." *Id.* "A borrower's right of rescission is extended from three days to three years if the lender (1) fails to provide notice of a borrower's right of rescission or (2) fails to make a material disclosure." *Reagen v. Aurora Loan Servs., Inc.*, 2009 WL 3789997, at *6 (E.D. Cal. Nov. 10, 2009) (citing 12 C.F.R. §226.23(a)(3)).

According to Kelley, WaMu failed to make required disclosures under TILA when Kelley took out the Loans in 2007. *See* Appellee App. at 235–37. Kelley states that he sent notice to Chase and rescinded the First Loan on August 24, 2009 and the Second Loan on June 24, 2010. *Id.* at 446–49. In granting summary judgment in favor of Chase, the Bankruptcy Court held that FIRREA applied to bar Kelley's TILA Rescission claims and that, in the alternative, Kelley's TILA Rescission claims were without merit. For the reasons discussed below, the Court agrees with the Bankruptcy Court.

As with Kelley's declaratory relief claim for "Statutory Contract Invalidity" discussed above, Kelley's claims for declaratory relief of "TILA Rescission" are "claims" that "relate to WaMu's acts or omissions for purposes of § 1821(d)(13)(D)." *See Rundgren*, 760 F.3d at 1065. Indeed, the Ninth Circuit recently held that FIRREA applied to bar a nearly identical cause of action. *See Grady v. Levin*, 655 F. App'x 601 (9th Cir. 2016). In *Grady*, the plaintiffs "entered into a loan with the Bank of Elmwood" in 2008. *Id.* at 601. The Bank of Elmwood failed, the FDIC was appointed as Receiver for the Bank of Elmwood, and the Bank of Elmwood's assets were acquired by Tri City National Bank. *Id.* The plaintiffs in *Grady* attempted to bring a claim for TILA rescission against Tri City National Bank, but the Ninth Circuit found that FIRREA applied to bar the plaintiffs' claim. *Id.* at 602. Specifically, the Ninth Circuit held that, because the plaintiffs had not "exercise[d] their right to rescind within [TILA's] unconditional three-day period, the timeliness of [the plaintiffs'] notice of rescission [wa]s entirely contingent on the *Bank of Elmwood*'s alleged 'fail[ure] to satisfy [TILA's] disclosure requirements." *Id.* (emphasis added). Thus, the plaintiffs' claim "plainly qualif[ied] as '*functionally*, albeit not *formally* against [the] failed bank.'" *Id.* (quoting *Benson*, 673 F.3d at 1215); *see also Tellado v. IndyMac Mortg. Servs.*, 707 F.3d 275, 280 (3d Cir. 2013) (holding that FIRREA applied to a plaintiff's claim against a purchasing bank because "[w]ithout [the failed bank's] wrongdoing, the [plaintiffs] would have no right to cancel and therefore no claim").

The same is true with regards to Kelley's TILA Rescission claims. As stated above, Kelley alleges that WaMu failed to satisfy TILA's disclosure requirements at the time that Kelley took out the Loans in 2007. *See* Appellee App. at 235–36. Kelley alleges that he rescinded the First and Second Loans on August 24, 2009 and June 24, 2010, respectively. *Id.* at 446–49. Accordingly, Kelley did not rescind his loans "within the unconditional three-day period" provided by TILA. *See Grady*, 655 F. App'x at 602. Accordingly, like the TILA rescission claim at issue in *Grady*, the "the timeliness of [Kelley's] notice[s] of rescission [are] entirely contingent on" *WaMu*'s failure to satisfy the requirements of TILA at the time that Kelley took out the Loans with WaMu.

15

Kelley's TILA Rescission claims are "*functionally*, albeit not *formally*" against WaMu's conduct, and FIRREA's jurisdictional bar applies. *Id.*

Finally, even assuming that Kelley's TILA Rescission claims are not barred by FIRREA, the Bankruptcy Court did not err in its alternative holding that Chase was entitled to summary judgment on Kelley's TILA Rescission claims because Kelley's TILA Rescission claims are without merit. As set forth above, "[a] borrower's right of rescission is extended from three days to three years if the lender (1) fails to provide notice of a borrower's right of rescission or (2) fails to make a material disclosure." *Reagan*, 2009 WL 3789997, at *6 (E.D. Cal. Nov. 10, 2009) (citing 12 C.F.R. §226.23(a)(3)). Federal Reserve Board regulations provide that "[t]he term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in § 226.32(c) and (d)." *Id.* (quoting 12 C.F.R. § 226.23(a)(3) n.48).

In its motion for summary judgment before the Bankruptcy Court, Chase submitted evidence that Kelley signed a "Notice of Right to Cancel" with respect to both Loans. *See* Appellee App'x 1192–93, 1229. Further, Kelley received and signed documents entitled "Truth in Lending Disclosure Statements," "Important Terms of Our WaMu Equity Plus," and "WaMu Equity Plus Agreement and Disclosure," which disclosed the material terms of the Loans. *See* Appellee App'x at 1205–55. Accordingly, because Kelley received the disclosures required by TILA, the three year period does not apply, and Kelley's right to rescind expired after three days. *See Reagan*, 2009 WL 379887, at *6. As stated above, Kelley took out the Loans in 2007, and Kelley did not attempt to rescind the Loans until over two years later. Thus, the Bankruptcy Court did not err in holding that Kelley's rescissions were untimely.

Further, the Bankruptcy Court also held that, even assuming that Kelley's rescissions were timely, Kelley's TILA Rescission claims failed because Kelley could not demonstrate that Kelley could tender an amount necessary to rescind the Loans. *See In re Kelley*, 545 B.R. at 12 ("[Kelley's] own schedules and monthly operating reports demonstrate that he has no current

16

Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

ability to pay back the amount he received to achieve complete rescission."). The Ninth Circuit has recognized "that where 'it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after,' i.e., refuse to enforce rescission." *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1031 (9th Cir. 2014) (quoting *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171–73 (9th Cir. 2003)). Kelley asserts that he has the capacity to pay back the amount to achieve rescission because Kelley can sell the Property. *See* Appellant Br. at 22, n.9. However, Kelley has proposed selling the Property for over seven years, Kelley has retained real estate agents, and Kelley has continually failed to sell the Property. *See In re Kelley*, 545 B.R. at 12; *see also* Appellee App'x at 119 (proposal to sell Property in Kelley's 2009 plan of reorganization); *id.* at 105 (bankruptcy court's 2008 approval of Kelley's retention of a real estate agent). Thus, the Bankruptcy Court did not err in its alternative holding that "it is clear from the evidence that [Kelley] lacks capacity to pay back what [he] has received," and thus summary judgment in favor of Chase was appropriate on Kelley's TILA Rescission claims. *Yamamoto*, 329 F.3d at 1171–73.

### D. Kelley's Declaratory Judgment Claims Regarding Chase's Ownership of the Notes and Deeds of Trust

Lastly, Kelley's remaining claims seek declaratory relief that Chase does not own the Loans at issue. *See* Appellee App. 237–39. Kelley's allegations and arguments as to his remaining claims are hard to discern, and Kelley does not address these claims clearly in his brief on appeal to this Court. However, these claims appear to be based on the same alleged misconduct of WaMu discussed above. For example, Kelley asserts that the First and Second Loans were fraudulently endorsed because the notes have the "blank endorsement of Cynthia A. Riley," who was acting as an agent of "Washington Mutual Bank, F.A." *See id.* at 237–39, 451. Further, Kelley asserts in his TAC that the First Loan was "not held or owned by Washington Mutual Bank at the time of the receivership," and that "[t]he Second Loan could not have been transferred by the Receiver from [WaMu] to Chase in September 2008." *Id.* at 238–39; *see also* Appellant Br. at 30 (arguing that the "[L]oans were not held by Washington Mutual Bank at the time of the

17
Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

Receivership").

To the extent that Kelley's declaratory relief claims regarding Chase's ownership of the notes and deeds of trust are rooted in the actions of WaMu, they are barred by FIRREA for the reasons discussed above. District courts have held that FIRREA's jurisdictional bar applies to similar factual allegations. In *Berg v. JP Morgan Chase, N.A.*, the plaintiffs took out a home loan with WaMu, and the plaintiff's loan was purchased by Chase pursuant to the P&A Agreement. 2015 WL 894460, at *1 (E.D. Pa. Mar. 3, 2015). After Chase filed a mortgage foreclosure action against the Bergs in state court, the Bergs filed a separate quiet title action against Chase. *Id.* The Bergs' quiet title action alleged that the note underlying their home loan "had been materially altered by the unauthorized endorsement" of Cynthia Riley, and that the note was thus unenforceable. *Id*. The district court held that FIRREA barred the Berg's quiet title action against Chase because "[t]he alleged defect in the Note exists only because the Note was endorsed in blank with a stamp bearing a Washington Mutual employee's name." *Id.* at *3. "Absent Washington Mutual's conduct," the district court explained, the Bergs "would have no right to challenge the validity of the Note and thus no claim." *Id.* at *3. Thus, "[b]ecause the Bergs' claim is based entirely on an act of the depository institution, Washington Mutual, § 1821(d)(13)(D)(ii) deprive[d] the Court of subject matter jurisdiction." *Id.*

Accordingly, to the extent that Kelley's claims against Chase are rooted in the assertion that Washington Mutual Bank, F.A. "could not authorize Cynthia Riley to blank endorse anything because it did not exist in 2007 or thereafter," Kelley's claims are "based entirely on an act of the [failed] depository institution, Washington Mutual," and are not based on any independent misconduct of Chase. *see id.* Thus, as with the claims at issue in *Berg*, Kelley's remaining declaratory relief claims "relate to WaMu's acts or omissions for purposes of § 1821(d)(13)(D)" and are barred by FIRREA. *See Rundgren*, 760 F.3d at 1065; *see also Berg*, 2015 WL 894460, at *3 ("Because the Bergs' claim is based entirely on an act of the depository institution, Washington Mutual, § 1821(d)(13)(D)(ii) deprives the Court of subject matter jurisdiction.").

18

Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

However, to the extent that Kelley's remaining claims contest Chase's proof of claims in the Bankruptcy Court and allege independent misconduct by Chase, FIRREA does not bar Kelley's claims. *See Rundgren*, 760 F.3d at 1061–63 (noting that FIRREA does not bar true "affirmative defenses," but FIRREA did bar the "plaintiffs bringing an independent action against [Chase], raising common law and statutory claims based on WaMu's alleged fraud"). Nonetheless, the Bankruptcy Court's grant of summary judgment in favor of Chase on these claims was appropriate because Kelley's claims regarding Chase's ownership of the Loans are not meritorious. As stated above, courts have repeatedly rejected Kelley's argument regarding the legal effect of WaMu's name change in 2005. *See Lanini*, 2014 WL 1347365, at *3 (rejecting "any claim that [WaMu's] name change somehow precludes Chase's authority to foreclose"). Moreover, it is undisputed that Chase entered into a P&A Agreement with the FDIC on September 25, 2008, and that "the FDIC transferred to Chase 'all right, title and interest of the Receiver in and to all of the assets of WaMu." *See Heflebower v. JPMorgan Chase Bank,* NA, 2013 WL 5476806, at *6 (E.D. Cal. Sept. 30, 2013). "In other words, Chase purchased WaMu's loans, including the right to collect payments against the loans, and the right to foreclose on them for failure of borrower to tender payments." *Id.*; *see also Jones v. JP Morgan Chase Bank, N.A.*, 2012 WL 4815468, at *1 (N.D. Cal. Oct. 9, 2012) ("[C]ourts in this district have found, interpreting the same P&A agreement, that Chase purchased WaMu's loans, including the right to foreclose on them."). Chase submitted evidence in the Bankruptcy Court that Chase owns and is in possession of the notes and deeds of trust underlying Kelley's Loans, and Chase produced evidence that Kelley's signature appears on these documents. *See* Appellee App. 1192–93.

In sum, the evidence shows that, Kelley "contracted to borrow funds from WaMu," that Kelley's "Loan[s] w[ere] subsequently sold to Chase under the P&A Agreement," and that "Chase [is] legally and justly entitled to collect and retain loan repayments from" Kelley. *Heflebower*, 2013 WL 5476806, at *6. Accordingly, the Bankruptcy Court did not err in granting summary judgment in favor of Chase.

19
Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's entry of judgment in favor of Chase is AFFIRMED.

**IT IS SO ORDERED.**

Dated: March 1, 2017

_____
LUCY H. KOH
United States District Judge

20
Case No.16-CV-01141-LHK
ORDER AFFIRMING BANKRUPTCY COURT'S ENTRY OF JUDGMENT IN FAVOR OF APPELLEE JP MORGAN CHASE BANK, N.A.